UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELISSA NICKERSON, )<br>    *Plaintiff*, )<br>)<br>    *vs*. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF THE SOCIAL SECURITY )<br>ADMINISTRATION, )<br>    *Defendant*. ) | 1:12-cv-00461-JMS-TAB |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Melissa Nickerson applied for a period of disability and disability insurance benefits, as well as supplemental security income from the Social Security Administration ("SSA") on June 11, 2009. After a series of administrative proceedings and appeals, including a hearing in May 2011 before Administrative Law Judge ("ALJ") Ronald Jordan, the ALJ issued a finding on July 6, 2011 that Ms. Nickerson was not entitled to disability insurance benefits or supplemental security income. In February 2012, the Appeals Council denied Ms. Nickerson's request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. 20 C.F.R. § 404.981. Ms. Nickerson then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

**I.**
**RELEVANT BACKGROUND**

Ms. Nickerson was forty-one years old at the time of her disability application on June 30, 2009. [Dkt. 8-5 at 2, 5.] She did not graduate from high school or obtain a GED. [Dkt. 8-2 at 61.] Ms. Nickerson claims she is disabled for a variety of impairments, which will be dis-

cussed as necessary below. She was last insured for purposes of disability on December 31, 2007. [*Id.* at 22.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on July 6, 2011. [*Id.* at 22-34.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Nickerson had not engaged in substantial gainful activity[1] since the alleged onset date of her disability. [*Id.* at 24.]

- At Step Two, the ALJ found that Ms. Nickerson suffered from depression, anxiety, and alcohol dependence. The ALJ further concluded that Ms. Nickerson's alleged back pain was not a medically determinable impairment.[2] [*Id.* at 24-25.]

- At Step Three, the ALJ found that Ms. Nickerson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. The ALJ concluded that Ms. Nickerson had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with certain nonexertional limitations including that the work should involve simple, repetitive tasks requiring minimal independent judgment or analysis, that she should have static, predictable work goals from day to day, that there should not be any public contact required to perform the functions of the job, and that the work must be performed at her own work station with only occasional, superficial contact with coworkers. [*Id.* at 27.]

- At Step Four, the ALJ found that Ms. Nickerson is capable of performing her past relevant work as a laborer, because it does not require the performance of work-related activities precluded by her RFC. [*Id.* at 32-34.]

Based on these findings, the ALJ concluded that Ms. Nickerson was not entitled to receive disability, disability insurance benefits, or supplemental security income. [*Id.* at 34.]

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

[2] Ms. Nickerson does not mention any physical impairments in connection with her request for remand so, accordingly, the Court will limit its review of the ALJ's decision to the analysis of her mental impairments.

On August 4, 2011, Ms. Nickerson requested that the Appeals Council review the ALJ's decision. [*Id.* at 8-9.] On February 3, 2012, the Appeals Council denied Ms. Nickerson's request for review. [*Id.* at 2-4.] Ms. Nickerson now appeals that decision to this Court.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC, which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

### III.
#### DISCUSSION

Ms. Nickerson challenges the ALJ's decision for three reasons, arguing that: (1) the decision failed to address Social Security Ruling ("SSR") 85-15 and the effects of stress in the workplace, [dkt. 12 at 13-15]; (2) the ALJ erroneously determined that Ms. Nickerson was capable of full time work based on her minimal level of activities of daily living, [*id.* at 16-17]; and (3) the ALJ did not properly address the evidence and did not have a medical expert interpret the evidence in terms of meeting or equaling the impairment listings, [*id.* at 18-20]. The Court will address each argument in turn.

**A. Effects of Stress in the Workplace**

Ms. Nickerson cites to SSR 85-15 and argues that "stress is not an intrinsic feature of a job, but the relation of an individual to the demands of a job." [*Id.* at 13.] She points to evidence of her past use of alcohol to "self medicate" in order to suppress memories of childhood abuse, and worsening depression once she stopped using alcohol, and asserts that "[t]here is no indication in the record that [she] would be able to handle workplace stressors." [*Id.* at 14.] She argues that "[b]ecause the ALJ failed to sufficiently articulate his assessment of the evidence to assure us that he considered the important evidence and to enable us to trace the path of his reasoning, remand is warranted." [*Id.* at 15.]

The Commissioner responds that, despite her citation to SSR 85-15, Ms. Nickerson does not identify how stress impaired her ability to work. [Dkt. 15 at 9.] He argues that the ALJ considered Mr. Nickerson's statements that she became anxious and had trouble concentrating while around others by "craft[ing] a generous RFC which limited [Ms. Nickerson] to unskilled work that involved only simple, repetitive tasks; minimal independent judgment or analysis; static, predictable work goals from day to day; no public contact in performing the essential functions of the job; and work that could be performed at [Ms. Nickerson's] own work station with only occasional, superficial contact with coworkers." [*Id.* at 9-10.] Ms. Nickerson did not reply to the Commissioner's arguments.

SSR 85-15 provides that:

> Determining whether [mentally impaired] individuals will be able to adapt to the demands or "stress" of the work place is often extremely difficult. This section is…intended…to emphasize the importance of thoroughness in evaluation on an individualized basis…The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day….Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

1985 SSR LEXIS 20, *14-16 (1985).

The SSA has further stated in SSR 85-16 that:

> Consideration of these factors [ability to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations and pressures] is required for the proper evaluation of the severity of mental impairments.

1985 SSR LEXIS 18, *3 (1985).

Ms. Nickerson relies upon *Lancellotta v. Secretary of Health & Human Services*, 806 F.2d 284 (1st Cir. 1986), for her argument that the ALJ erred in failing to consider how she

would handle stress in the workplace. [Dkt. 12 at 14.] *Lancellotta* and SSR 85-15 "require the ALJ to consider the effect of stress on the individual claimant and not to make unsupported conclusions regarding a claimant's ability to cope with stress." *Durrett v. Apfel*, 2000 U.S. Dist. LEXIS 7388, *21-22 (S.D. Ind. 2000). An ALJ cannot simply place restrictions on the claimant's RFC such as limiting work to repetitive tasks, without making specific findings "about how the [claimant's] stress affects [her] ability to understand, carry out and remember instructions, respond appropriately to supervision, and coworkers, and deal with customary work pressures." *Felver v. Barnhart*, 243 F.Supp.2d 895, 907 (N.D. Ind. 2003). *See also Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (ALJ could not account for claimant's limitations on concentration, persistence, and pace simply by restricting his inquiry to vocational expert to "simple, routine tasks that do not require constant interactions with coworkers or the general public").

The ALJ specifically addressed the *Stewart* case in his opinion with the following language:

> Thus, I find no functional consequence of the claimant's limitation in this area beyond an inability to sustain detailed or complex work processes, and, in the case at hand, a restriction to simple repetitive tasks encompasses that restriction. I am required by the Administration's regulations to categorize the claimant's level of mental functioning using different terms at steps three and four of the sequential evaluation, but I do not find that the claimant's "moderate" deficiency at step three represents a separate functional limitation, or one that is different in degree, from the restriction to simple, repetitive tasks that I have assessed below, at step four. *Cf. Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009).

[Dkt. 8-2 at 26.]

The Court is aware of a growing trend reflecting the use of similar, and in some cases nearly identical, language in ALJ opinions discussing the Step Three analysis. The Court finds this language confusing and essentially meaningless, and cautions that the use of this language does not excuse compliance with *Stewart* and other cases requiring the ALJ to specifically con-

sider and address how a claimant's impairments will affect his or her ability to handle stress in the workplace, rather than simply crafting an RFC that exempts them from certain types of work.

Nevertheless, the Court concludes that, here, the ALJ has satisfied those obligations. The only evidence Ms. Nickerson points to regarding her alleged inability to handle stress in the workplace is that: (1) she has a history of "using alcohol to 'self medicate' in order to bury the memories of abuse she suffered as a young girl into her teenage years," [dkt. 12 at 14]; (2) her depression "has gotten worse since she stopped drinking as she no longer uses it as a blanket to block out that stress," [*id.*]; and (3) she "cannot even handle leaving the house to do a short shopping trip," [*id.*].

The ALJ addressed all of that evidence, concluding that Ms. Nickerson was still capable of performing a job with the following restrictions: "the work should involve simple, repetitive tasks requiring minimal independent judgment or analysis; static, predictable work goals from day to day; no public contact required to perform the functions of the job; and the work must be performed at her own work station with only occasional, superficial contact with coworkers." [Dkt. 8-2 at 27.] Specifically, the ALJ considered Ms. Nickerson's use of alcohol, her depression, and her daily activities, noting the following based on the record:

- She performed poorly on a consultative mental status examination in July 2009, but appeared to be intoxicated despite stating that she had been sober since the beginning of the month, [*id.* at 26, 30; dkt. 8-7 at 98];

- She was "oriented with intact memory" during a March 2010 mental status examination, [dkts. 8-2 at 26; 8-7 at 148], and, although she had some trouble answering questions, [*id.*], she only had "moderate" difficulties, [dkt. 8-2 at 26];

- She claims to have an inability to concentrate and a dislike of being around other people, [dkts. 8-2 at 28; 8-6 at 7];

- She testified that she has been prescribed anti-anxiety medications, but had not taken them the day of her hearing, [dkt. 8-2 at 28, 45];

- The record contains inconsistencies regarding her alcohol use, including that she was hospitalized in May and June 2010 partly due to intoxication and cannabis use, [dkts. 8-2 at 30; 8-8 at 52-53];

- Hospital records from May and June 2010 indicate that she "improved fairly rapidly within a few days of sobriety," [dkts. 8-2 at 30; 8-8 at 81-85];

- Even when she alleged an increase in symptoms, results from her mental status examinations were "fairly normal" in November 2010, and January and February 2011, [dkts. 8-2 at 31; 8-8 at 13, 17, 28]; and

- While Ms. Nickerson and others "described daily activities which are fairly limited," that evidence "cannot be objectively verified with any reasonable degree of certainty," and, even if her daily activities are limited," "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to their reasons, in view of the relatively weak medical evidence," [dkt. 8-2 at 32].

In short, the ALJ considered evidence of Ms. Nickerson's alcohol use, alleged worsening depression from ceasing alcohol use, and alleged inability to leave the house, and either rejected that evidence as not credible or factored it into his RFC analysis. Indeed, all of the RFC's limitations relate to how Ms. Nickerson will handle stress in the workplace. While a different ALJ may have reached a different conclusion, the Court finds that the ALJ here built a logical bridge between the evidence and his decision, and remand based on this ground is improper. *Cf. Lancellotta*, 806 F.2d at 285 (remand necessary where ALJ did not engage in any evaluation of claimant's "vocational abilities in light of his anxiety disorder," but still concluded that he could perform low stress work).

### B. Activities of Daily Living

Ms. Nickerson argues that the record indicates she engages in "very limited 'activities' of daily living," which "do not translate to an ability to perform full time work as required by Social Security law." [Dkt. 12 at 17.] The Commissioner responds that the ALJ did not equate her limited daily activities with her ability to work full time, but instead considered those activities in

analyzing the credibility of her symptoms. [Dkt. 15 at 10-11.] Ms. Nickerson did not reply to the Commissioner's arguments.

At the outset, the Court notes that the ALJ's findings regarding Ms. Nickerson's daily activities were made in connection with his determination that she did not have an impairment which met or medically equaled a listed impairment, [dkt. 8-2 at 25], and with his RFC determination, which took into account her characterization of her symptoms, [*id.* at 31-32]. The ALJ did not, as Ms. Nickerson implies, simply conclude that, because she could perform certain daily activities, she could work full time.

As to the ALJ's determination that Ms. Nickerson's daily activities do not establish that she cannot function at the level assessed, Ms. Nickerson cites cases which instruct that the ability to accomplish household chores should not be equated with the ability to be employed. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *see also Hughes v. Astrue*, 2013 U.S. App. LEXIS 1012, *6-7 (7th Cir. 2013). While the Court is mindful of that principle, that is not what happened here. Instead, the ALJ discounted evidence of limited daily activities in his RFC assessment, rather than using the ability to perform daily activities as a basis for denying disability.

To the extent Ms. Nickerson disagrees with the ALJ's treatment of the daily activities evidence in determining her RFC, the Court will consider whether the ALJ erred in discounting her credibility on this issue. In connection with this argument, Ms. Nickerson pointed to the following as evidence of her inability to work full time: (1) that she "lives with an older gentleman who reminds her to bathe, eat, take her medications, and does most of the shopping and cooking for her," [dkt. 12 at 16]; and (2) that she rarely leaves the house and prefers to stay inside with the blinds closed, [*id.*]. The ALJ considered this evidence, but concluded that it was insufficient to

establish that she was unable to function at the level assessed, [*id.* at 25], and, later, that it was not credible, [*id.* at 32].

"The credibility determinations of an ALJ are entitled to special deference…." *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). While an ALJ has an obligation to "articulate at some minimal level his analysis of the evidence," *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985), a court "will not disturb a credibility finding unless it is 'patently wrong in view of the cold record,'" *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993) (*quoting Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986)).

The ALJ explained why he was discounting Ms. Nickerson's claim that she is unable to perform many daily activities. He stated that, while Ms. Nickerson and others have described fairly limited daily activities, even if her activities are that limited, it is difficult to attribute them to her medical condition based on her "relatively weak medical evidence and other factors discussed in this decision." [*Id.* at 32.] Those "other factors" discussed by the ALJ elsewhere in the decision include Ms. Nickerson's alcohol use, and the ALJ cited medical records indicating that Ms. Nickerson's ability to function improved when she was sober. [*Id.* at 30; Dkt. 8-8 at 81-85.] The Court finds that the ALJ did not equate Ms. Nickerson's ability to perform household chores with the ability to work full time, but rather acknowledged her claim that she could only perform limited activities and articulated a rational basis for discounting her credibility. This credibility determination properly factored into the ALJ's impairment determination and RFC assessment, and the Court will not remand based on this ground.

### C. Medical Expert

Ms. Nickerson argues that the ALJ should have used a medical expert to review her medical records and determine her listing equivalency and RFC. [Dkt. 12 at 18-20.][3] The Commissioner responds that the ALJ was not required to obtain the opinion of a medical expert, and that an expert opinion already existed in the record. [Dkt. 15 at 8.] He argues further that Ms. Nickerson never requested that the ALJ obtain additional medical evidence, despite the fact that she was represented by counsel at her hearing. [*Id.* at 8-9.]

An ALJ must obtain a medical opinion from a medical expert when additional evidence is received that the ALJ believes could modify a state agency consultant's opinion, or "[w]hen no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable." SSR 96–6p, 1996 SR LEXIS 3, *9. "If the ALJ believes that he lacks sufficient evidence to make a decision, he must adequately develop the record and, if necessary, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). Requiring the ALJ to obtain medical testimony reduces the chance that the ALJ will "succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Here, Ms. Nickerson mentions the requirement that a medical expert be consulted if additional medical evidence is received that could modify the State Agency medical consultant's finding, but does not provide any detail regarding what "additional medical evidence" was re-

---

[3] While Ms. Nickerson titles this section of her brief "The decision fails to properly address the evidence or to have a medical expert interpret the evidence in terms of meeting or equaling the Listings," [dkt. 12 at 18], Ms. Nickerson only addresses the ALJ's failure to use a medical expert, and does not point to any other alleged shortcomings in the ALJ's consideration of the medical evidence. Accordingly, the Court will limit its discussion to the ALJ's failure to use a medical expert.

ceived, or how it could have changed the findings of Dr. Stacia Hill, who completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity Assessment in August 2009. [Dkt. 8-7 at 107-138.] Indeed, Dr. Hill's assessment was consistent with the mental status examinations of Dr. Wages, [*id.* at 98-101], and Dr. Davidson, [*id.* at 147-150], which the ALJ specifically considered. In her August 6, 2009 report, Dr. Wages stated that Ms. Nickerson appeared intoxicated during the evaluation, [*id.* at 99], and that she appeared to be below average in intellectual functioning and stated that she was depressed, [*id.*]. Dr. Wages also noted that she "has been self-medicating with alcohol." [*Id.*] She concluded that Ms. Nickerson suffered from alcohol dependence and depressive disorder, with a Global Assessment of Functioning ("GAF") of 58, [*id.* at 101], which indicates "moderate symptoms," [dkt. 8-2 at 28].

In his March 2, 2010 mental status examination report, Dr. Davidson noted that Ms. Nickerson claimed to suffer from depression, but was "of questionable reliability as far as her prescribed and taken medications, as well as possibly with alcohol consumption." [Dkt. 8-7 at 147.] Dr. Davidson stated that Ms. Nickerson was "alert and cooperative," although "at times did not seem to be attending." [*Id.* at 148.] He noted that while she denied alcohol use, her speech "may have been somewhat slurred." [*Id.*] Dr. Davidson concluded that Ms. Nickerson suffered from alcohol abuse and dependence "apparently in remission," depressive disorder, and mixed personality disorder with borderline and schizoid features. [*Id.* at 150.] He measured her GAF at 60, which is "on the cusp of mild to moderate symptoms." [Dkt. 8-2 at 30.]

The ALJ also considered medical records from mental health counseling Ms. Nickerson received at Meridian Services in 2010 and 2011, and from an admission to Ball Memorial Hospital in May 2010. [*Id.*] Those records indicate that Ms. Nickerson reported she had been using alcohol, and was hospitalized partially for alcohol and cannabis use. [Dkt. 8-8 at 52-53.] They

also indicate that Ms. Nickerson improved rapidly after ceasing alcohol use, and stated that "I know there is more than sitting home and drinking." [*Id.* at 82-85.]

The ALJ based his conclusions on these medical opinions – which are consistent with the expert opinion of Dr. Hill. [Dkt. 8-7 at 107-138 (finding Ms. Nickerson suffered from affective, substance addiction, and depressive disorders, had mild limitations on her daily activities and social functioning, moderate limitations on her concentration, persistence, or pace, had no episodes of decompensation of extended duration, had a GAF of 58, and "[w]hile it is expected that the claimant would be unable to complete complex tasks, claimant would be able to complete repetitive tasks on a sustained basis without special considerations"). Although the ALJ did not cite specifically to Dr. Hill's report, the reports he did rely upon are consistent with Dr. Hill's report and Ms. Nickerson has not explained how the retention of a medical expert other than Dr. Hill would likely change his conclusions. Additionally, the ALJ's reliance on and citation to medical records from several different medical providers indicates that he did not "play doctor," as Ms. Nickerson argues. Remand based on Ms. Nickerson's argument that the ALJ should have consulted a medical expert is not warranted.

## IV.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court finds that Ms. Nickerson has not raised any legal basis to overturn the Commissioner's decision that she does not qualify for disability, disa-

bility insurance benefits, or supplemental security income.  Therefore, the decision below is **AF-FIRMED**.  Final judgment will be entered accordingly.

02/05/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov